297 Ga. 120
FINAL COPY

S15A0578. DUGGER v. THE STATE.

NAHMIAS, Justice.

Appellant Maurice Dugger was convicted of felony murder and armed robbery in connection with the shooting death of Leonard Cox. On appeal, he disputes the sufficiency of the evidence and asserts double jeopardy violations and errors in the trial court's jury instructions. We affirm.[1]

1.      Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. Maya Wilson testified that on the night of April 1, 2012, she and Cox were on the back porch of his house in Macon, where Cox had been selling crack cocaine throughout the day. As Wilson walked toward the edge of the porch, she heard a noise in the bushes. She then saw a man approach Cox, and she ducked inside the house to avoid being seen. The back

---

[1] The crimes occurred on April 1, 2012. On July 10, 2012, Appellant was indicted in Bibb County for malice murder, felony murder based on aggravated assault, armed robbery, and possession of a firearm by a convicted felon. The firearm charge was severed for trial and later nolle prossed. After a trial from August 19 to 21, 2012, the jury found Appellant not guilty of malice murder, but guilty of felony murder and armed robbery. The trial court sentenced Appellant to life in prison without parole on the murder conviction and a consecutive term of life in prison on the armed robbery conviction. On August 29, 2013, Appellant filed a motion for new trial, which he amended on August 6, 2014. After an evidentiary hearing, the trial court denied the motion on October 29, 2014. Appellant filed a timely notice of appeal, and the case was docketed in this Court for the January 2015 term and submitted for a decision on the briefs.

porch was dimly lit, but from her position inside, Wilson heard the man tell Cox to "give it up" and saw the man's shadow and the silhouette of a gun in his hand. She watched Cox empty his pockets and give everything he had on him to the man. The man then told Cox, "You must not think I'll kill you." Cox told the man that he had more inside the house and moved toward the door. Once inside, Cox tried to slam the door behind him, but the man blocked the door with his foot, stuck the gun around the door, fired one shot, and ran away.

The bullet entered Cox's left side and pierced his heart and lungs; he died from the wound moments later. When the police interviewed Wilson, she told them that she was able to clearly see the man's face when he tried to follow Cox into the house. She said that she had seen the man before but could not remember his name. She gave the police a physical description of the man, which matched Appellant, and she later identified Appellant as the shooter in a photo lineup and at trial. The police also interviewed a woman to whom Cox had given crack cocaine earlier that day. She said that a man she knew as "Eater" approached her about 15 minutes before the shooting, asking whether Cox had drugs available. Her description of "Eater" matched Wilson's description of the shooter, and Appellant admitted that he went by that name.

2

Appellant was arrested and interviewed four days after the shooting, and the videotape of the interview was played for the jury. During the interview, Appellant first denied being at the scene of the shooting. He then said that he went to buy drugs from Cox, they got into an argument, Cox pulled a gun on him, and Cox's gun went off as they struggled. Appellant then admitted that he brought a gun to the scene and never saw Cox with a gun, but he claimed that he fired in self-defense. At trial, Appellant further altered and embellished his story. He testified that he approached Cox to purchase crack cocaine after winning between $800 and $900 gambling, but Cox had been drinking and began accusing Appellant of trying to sleep with Wilson. Appellant claimed that Cox then attacked him and began dragging him into the house, where he feared Cox would kill him. Appellant said that he pulled his gun out after he managed to position the door between himself and Cox, and claimed that he begged Cox to let him leave before firing the gun as they struggled for control of it.

2.     Appellant contends first that the evidence presented at trial was legally insufficient to support his convictions. He argues that the jury could not reasonably believe Wilson's testimony, because she admitted to drinking

3

alcohol immediately prior to the shooting and the dim lighting on the back porch impaired her ability to see the incident. Appellant also asserts that the jury had to accept his testimony because it was not contradicted by any physical evidence.

Whether a witness's testimony should be believed is, however, "a matter to be decided by the jury that saw and heard the testimony, not by an appellate court reviewing a transcript." Walker v. State, 295 Ga. 688, 690 (763 SE2d 704) (2014). See also Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). When viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

3.     Appellant next contends that his felony murder conviction violates the double jeopardy provisions of both the United States Constitution and the Georgia Constitution. See U. S. Const. amend. V; Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII. Appellant argues that because jeopardy had attached when

the jury acquitted him of malice murder, the conviction on the felony murder charge violated his protection against double jeopardy. The constitutional prohibitions against double jeopardy preclude a second prosecution for the same offense after an acquittal or conviction as well as multiple punishments for the same offense. See Williams v. State, 288 Ga. 7, 8 (700 SE2d 564) (2010). Double jeopardy does not preclude a prosecution for multiple crimes based on the same conduct. See OCGA § 16-1-7 (a) ("When the same conduct of an accused may establish the commission of more than one crime, the accused may be prosecuted for each crime."). Appellant faced a single prosecution, and he received a single punishment for murdering the victim. His double jeopardy rights were therefore not violated. See Manzano v. State, 290 Ga. 892, 893, n. 2 (725 SE2d 326) (2012) (explaining that a defendant's "prior acquittal for malice murder has no bearing on his subsequent retrial for felony murder").

4.    Appellant also argues that the verdicts on malice murder and felony murder violated his double jeopardy rights because the verdicts on those charges were inconsistent. But Appellant cites no authority holding that inconsistent verdicts present a double jeopardy issue. Moreover, this Court abolished the inconsistent verdicts rule in Georgia nearly three decades ago in Milam v. State,

5

255 Ga. 560, 562 (341 SE2d 216) (1986), based on "the principle that it is not generally within the trial court's power to make inquiries into the jury's deliberations, or to speculate about the reasons for any inconsistency between guilty and not guilty verdicts." Dumas v. State, 266 Ga. 797, 799 (471 SE2d 508) (1996). Nor in any event were the verdicts necessarily inconsistent, because "a jury is clearly authorized to find a defendant guilty of felony murder even where it finds that a defendant did not possess the requisite 'malice' to sustain a malice murder conviction." Manzano, 290 Ga. at 893, n. 2. See also Watson v. State, 289 Ga. 39, 44 (709 SE2d 2) (2011) (finding no inconsistency between verdicts of guilty on felony murder and not guilty on malice murder); Walker v. State, 271 Ga. 328, 329 (519 SE2d 670) (1999) (same).

5.     Appellant also contends that the trial court erred by instructing the jury to return separate verdicts on malice murder and felony murder because Count 1 of the indictment alleged only felony murder. Count 1 alleged that Appellant "did unlawfully and with malice aforethought and while in the commission of the felony aggravated assault cause the death of Leonard Cox, a human being, by shooting him with a handgun, a deadly weapon, contrary to the laws of said State . . . ." The longstanding rule in Georgia is that an

6

indictment "may take the form 'of a single count which contains alternative allegations as to the various ways in which the crime may have been committed.'" Morris v. State, 280 Ga. 179, 181 (626 SE2d 123) (2006) (citation and emphasis omitted). We have held that this rule applies to charging malice murder and felony murder in a single count. See Leutner v. State, 253 Ga. 77, 79 (218 SE2d 820) (1975). Count 1 clearly alleged the elements of both malice murder, see OCGA § 16-5-1 (a), and felony murder, see OCGA § 16-5-1 (c). Thus, there was no error in the trial court's instruction.

6. In his next enumeration, Appellant alleges that the trial court's instruction on aggravated assault allowed the jury to convict him of felony murder in a manner different from the manner alleged in the indictment. The indictment alleged that the aggravated assault underlying the murder was perpetrated by "shooting [the victim] with a handgun, a deadly weapon." In its instruction on aggravated assault, the court told the jury, "A person commits the offense of aggravated assault when that person assaults another person with a deadly weapon." The court then added, "To constitute such an assault, actual injury to the alleged victim need not be shown." However, the trial court cured any error in its definition of aggravated assault by providing the jury with a

7

written copy of the indictment and instructing the jury on the State's burden to prove each material allegation of the indictment and every essential element of the crimes charged beyond a reasonable doubt. See Williams v. Kelley, 291 Ga. 285, 286-287 (728 SE2d 666) (2012).

7. Appellant maintains that the trial court erred in denying his request to give a jury instruction on the lesser included offense of voluntary manslaughter.

> To support a charge of voluntary manslaughter, there must be evidence that the accused "act[ed] solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). . . . [E]ven slight evidence showing that the victim seriously provoked the defendant requires the trial court to give a requested charge on voluntary manslaughter. This Court has held, however, that neither fear that someone is going to pull a gun nor fighting are the types of provocation which demand a voluntary manslaughter charge.

Smith v. State, 296 Ga. 731, 737 (3) (___ SE2d ___) (2015) (citation omitted).

Appellant claimed in his statement to the police and his testimony at trial that he shot Cox while they fought out of fear for his life, not out of anger or other passion.

> While jury charges on self-defense and voluntary manslaughter are not mutually exclusive, the provocation necessary to support a

8

charge of voluntary manslaughter is different from that which will support a claim of self-defense. "The distinguishing characteristic between the two claims is whether the accused was so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself. Only where this is shown will a charge on voluntary manslaughter be warranted."

Walker v. State, 281 Ga. 521, 524 (640 SE2d 274) (2007) (citations omitted).

There was no evidence that Appellant shot Cox due to irresistible passion, and thus no evidence to support a voluntary manslaughter charge. See id. See also Jackson v. State, 282 Ga. 494, 498 (651 SE2d 702) (2007) (holding that no voluntary manslaughter charge was warranted where "'at best, [the] evidence shows that [Appellant] was attempting to repel an attack, not that he was so angered that he reacted passionately'" (citation omitted)).

8. Appellant also contends that the trial court erred by denying his request for a jury charge on attempted robbery, because the State had not proved that he actually took money or property from Cox. But there was no evidence of an *attempted* robbery. At trial, Appellant testified that he never tried to rob Cox, while Wilson testified that she saw Appellant point a gun at Cox and demand that he "give it up," after which Cox gave Appellant everything in his possession. And while Cox was killed before he could give Appellant any

9

money or property from his house after indicating that he had more inside, anything else Cox might have given Appellant would have been part of the same robbery, so Appellant's following Cox toward the door cannot constitute a separate attempted robbery. See Randolph v. State, 246 Ga. App. 141, 142, 144 (538 SE2d 139) (2000) (concluding that the appellant's forcing the store manager to give him money from the store safe and then taking the manager's wallet constituted a single robbery because "[w]hen one victim is robbed of more than one item in a single transaction, only one robbery may be charged"). As the trial court correctly explained, "the evidence, based on who[m] the jury chose to believe, offered the jury a choice that either [Appellant] wholly completed the crime of armed robbery or that no crime occurred at all." The evidence did not support an instruction on attempted robbery.

9. In his final enumeration, Appellant argues that the trial court erred by giving incomplete instructions on justification.

(a) Appellant first contends that the court erred by denying his request to charge the jury that "threats accompanied by menaces" may, in some instances, be sufficient to arouse the fears of a reasonable man that his life is in danger. See Sawyer v. State, 161 Ga. App. 479, 482 (288 SE2d 108) (1982).

10

Appellant argues that this instruction was necessary for the jury to understand that the reasonableness of Appellant's fear for his life must be determined from the position of a reasonable person standing in Appellant's shoes. But the court's instructions on justification substantially covered this legal principle. See Walton v. State, 272 Ga. 73, 75 (526 SE2d 333) (2000) (explaining that the trial court does not err when its charge as given "was full and fair and substantially covered all the legal principles relevant to the determination of appellant's guilt").

(b)     The trial court instructed the jury that "[t]he fact that a person's conduct is justified is a defense to prosecution for any crime based on that conduct," and gave the full pattern charge on "Justification; Use of Force in Defense of Self or Others." See Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.10.10 (2012). Appellant asserts that the court was also required to instruct the jury that it had a duty to acquit if it found that his actions were justified. However, because the instructions the court gave "adequately covered justification and the State's burden of proof," the court did not err in "'failing to specifically charge the jury that it would be their duty to acquit the defendant if they believed he was justified in committing the killing.'"

11

Coleman v. State, 264 Ga. 253, 254 (443 SE2d 626) (1994) (citation omitted). Indeed, this Court has explained that the instruction Appellant requested is not only unnecessary, but may mislead the jury to conclude that its duty to acquit is limited by a defense of justification, when in fact the jury must "acquit whenever the state has failed to make out its complete case." Lavender v. State, 234 Ga. 608, 610 (216 SE2d 855) (1975).

(c)    Appellant also asserts that the trial court erred by not instructing the jury under OCGA § 16-3-20 (6) that the defense of justification can be claimed "[i]n all other instances which stand upon the same footing of reason and justice as those enumerated in [the Code]."  Appellant argues that this instruction was required to "fairly present to the jury the law on [his] theory of the case and his defense of justification."  Nelson v. State, 213 Ga. App. 641, 643 (445 SE2d 543) (1994).

Nelson explains that the General Assembly included the final subsection in OCGA § 16-3-20 to "allow[ ] the defense of justification in circumstances unparticularized by the legislature but instead left to the jury, with the limitation that it be of the same quality as the enumerated instances." Nelson, 213 Ga. App. at 642.  In other words, an instruction under OCGA § 16-3-20 (6) is

12

appropriate only if the defendant's conduct is not encompassed by one of the specifically enumerated circumstances for claiming a defense of justification, but still might be justified because it "stand[s] upon the same footing of reason and justice as those enumerated." In this case, Appellant claimed that he shot Cox in self-defense, which is a well-established and expressly enumerated justification defense and one on which the court adequately instructed the jury. See OCGA §§ 16-3-20 (1); 16-3-21. Appellant offered no other theory of justification. Accordingly, the trial court properly declined to give Appellant's requested instruction on OCGA § 16-3-20 (6).

Judgment affirmed. All the Justices concur.

Decided May 11, 2015.

Murder. Bibb Superior Court. Before Judge Simms.

Robert M. Bearden, Jr., for appellant.

K. David Cooke, Jr., District Attorney, Nancy S. Malcor, Jason M. Wilbanks, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, for appellee.