314 Ga. 360
FINAL COPY


S22A0670. MATHEWS v. THE STATE.


PETERSON, Presiding Justice.

Following a joint trial with co-defendant Shelton Jackson, Jarvis Mathews was convicted of felony murder, aggravated assault, and possession of a firearm during the commission of a felony for the fatal shooting of Grant Reynolds and the non-fatal shootings of Larentae and Roger Mumphery.[1] On appeal, Mathews argues that

---

[1] The crimes occurred on May 17, 2001. In November 2001, a Fulton County grand jury indicted Mathews and Jackson for malice murder (Count 1); felony murder (Count 2); aggravated assault on Reynolds, Larentae, and Roger (Counts 3, 6, and 7, respectively); and possession of a firearm during the commission of a felony (Count 8). Jackson was charged with additional counts (Counts 4 and 5) that were later dismissed. At a joint trial in May 2003, Mathews was found guilty of all charges except malice murder. Jackson was found guilty of all charges, and we affirmed his convictions on appeal. See *Jackson v. State*, 282 Ga. 494 (651 SE2d 702) (2007).

The trial court sentenced Mathews to life in prison for Count 2, 20-year terms for Counts 6 and 7 to run concurrently with each other and with Count 2, and a 5-year term for Count 8 to run consecutively to the preceding counts. The trial court merged Count 3 with Count 2 for sentencing purposes. Mathews timely filed a pro se motion for new trial in June 2003. In 2015, the trial court entered an order clarifying that Mathews's pro se motion was valid and noting that a prior order appointing appellate counsel had not been provided to the local Public Defender's Office. In 2018, new counsel filed a purported "Out-of-

(1) the evidence was insufficient to support his convictions; (2) the trial court impermissibly allowed the State to establish his guilt under a party-to-a-crime theory even though this theory was not alleged in the indictment; (3) the State improperly commented on his pre-arrest silence; and (4) he received ineffective assistance of counsel.

We conclude that the evidence is sufficient to support Mathews's convictions — two eyewitnesses testified that he participated in the crimes. His claim that he was improperly convicted as a party to a crime is meritless, because the evidence supported a finding that he directly committed the crimes; moreover, the indictment charged him and Jackson jointly for committing the crimes, so he was on notice that he could be

Time Motion for New Trial," which actually functioned merely as an amendment to Mathews's earlier pro se motion for new trial, given the trial court's ruling that the earlier motion was valid. It is unclear why the case languished for so long without meaningful action, but after the case was reassigned to a different division of the court in 2020, the new judge acted promptly. Following a hearing in March 2021, the trial court denied Mathews's motion for new trial on September 1, 2021. Mathews filed a timely notice of appeal, and his case was docketed to this Court's April 2022 term and orally argued on June 21, 2022.

convicted as a party to a crime. Mathews waived his challenge to the State's comment on his pre-arrest silence, and cannot assert a claim based on the State's comment on his co-defendant's pre-arrest silence. Trial counsel was not deficient in failing to argue that the evidence was insufficient to convict Mathews as a party to a crime or failing to object to the trial court's jury instruction on party to a crime. Finally, trial counsel was not deficient in failing to object to the State's comments on Jackson's pre-arrest silence, and even if counsel was deficient in failing to object to comments on Mathews's pre-arrest silence, this deficiency did not prejudice Mathews because the comments were brief and the evidence of guilt was strong. We therefore affirm.

As described in co-defendant Jackson's appeal, the trial evidence showed the following.

> [O]n May 17, 2001, Larentae Mumphery, Grant Reynolds, and Roger Mumphery (Larentae's cousin) went to an apartment complex in Atlanta to meet with Jackson and Jarvis Mathews so that Reynolds could inspect and possibly purchase a set of tire rims. Larentae Mumphery and Mathews had known each other in middle school and high school, and about a week before May 17, 2001,

3

Larentae saw Mathews at a gas station and asked Mathews about some rims that were on his car. Mathews told Larentae that he had some more rims at his house, and Larentae later called Mathews and arranged to meet him at the foregoing apartment complex in order for Grant Reynolds to look at the rims. Larentae testified that Reynolds was not going to purchase the rims that day and did not have any money with him. According to Larentae, the trio met Mathews at the apartment about 4:00 p.m. on May 17, and Mathews called someone on his cell phone and told the person to bring the rims to the apartment.

Larentae testified that, a few minutes later, Jackson arrived at the apartment. Larentae stated that Jackson stood in the door of the apartment and never came inside; that Jackson and Reynolds spoke in the doorway; that he (Larentae) could see them the whole time; that Jackson screamed "where's the money"; and that Jackson then started shooting at the Mumpherys and Reynolds. According to Larentae, after Jackson started shooting, Reynolds "tussled" with Jackson and Reynolds then jumped back into the apartment. Larentae added that Reynolds and Jackson did not "tussle" before the shooting started. Larentae testified that, once Jackson shot at Reynolds, he pointed the gun at him and fired the gun. According to Larentae, once the shooting started, "everybody just started running" and tried to get out a back door or window that had burglar bars on it. Larentae added that, while the victims were running around, Jackson continued to shoot at them, and that, because he (Larentae) could not find a way out of the apartment other than through the front door, he [lay] down and played dead. Larentae also testified that he could not tell if Mathews had a gun, and that he did not know the exact number of shots that were fired, but that it seemed like it

4

was about ten shots.

Roger Mumphery gave testimony that was consistent with the testimony given by Larentae, except that Roger testified that Mathews also fired some shots. According to Roger, when Jackson and Reynolds were standing in the door, Jackson asked Reynolds "where the money at" and then started shooting at Reynolds. Reynolds then jumped into the apartment, and Jackson started shooting at the Mumpherys and Reynolds. Roger testified that all three victims were running around the apartment screaming that they did not have any money, and that Jackson was shouting "where the money at" and shooting at them. Roger added that Reynolds was not armed when he went to the apartment.

*Jackson v. State*, 282 Ga. 494, 495-496 (1) (651 SE2d 702) (2007).

Roger repeatedly testified that Mathews and Jackson were both shooting at the victims from the doorway and asking for money. Roger said that Mathews had a chrome revolver, while Jackson had a black gun.

During the shooting, Larentae Mumphery was shot once in the thigh, and Grant Reynolds was shot twice and died from his wounds. Reynolds was found in a hallway off the main living room of the apartment. Police found eight shell casings at the crime scene, including some in the hallway and around the living room, and forensic evidence established that they were all fired from one gun. Moreover, the medical examiner testified that there was no soot, searing, or stippling on Reynolds, indicating that he was shot from a distance of greater than three

feet. Jackson and Mathews fled the crime scene immediately after the shooting.

Id. at 496 (1). Although the shell casings found at the apartment were all fired from the same semi-automatic weapon, a firearms examiner testified that a revolver does not automatically eject its spent cartridge casings; they have to be manually extracted.

1. Mathews argues that the evidence was insufficient to support his convictions for the felony murder and aggravated assault of Reynolds and the aggravated assault of Larentae. Mathews's challenge to his conviction for the aggravated assault of Reynolds is moot because that count merged with the felony murder conviction. See *Anderson v. State*, 299 Ga. 193, 196 (1) n.4 (787 SE2d 202) (2016). We conclude that the evidence was sufficient to support Mathews's convictions for the felony murder of Reynolds and aggravated assault of Larentae.[2]

---

[2] Mathews does not challenge his convictions for the aggravated assault of Roger and possession of a firearm during the commission of a felony, and we no longer review sua sponte the sufficiency of the evidence, except that of murder convictions resulting in the death penalty. See *Davenport v. State*, 309 Ga. 385, 398-399 (4) (b) (846 SE2d 83) (2020).

When evaluating the sufficiency of evidence as a matter of federal due process, we must determine whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). In making that determination, "we view the evidence in the light most favorable to the verdict, and we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the [jury]." *Wilkerson v. State*, 307 Ga. 574, 574 (837 SE2d 300) (2019) (citation and punctuation omitted).

The evidence recounted above authorized the jury to find Mathews guilty of the felony murder of Reynolds and the aggravated assault of Larentae. Mathews acknowledges that Roger testified that Mathews fired a handgun, and appears to argue that this testimony establishes his guilt only as to the aggravated assault against Roger, because Mathews maintains that there is no evidence that he was the person who directly committed the crimes of felony

7

murder of Reynolds or aggravated assault of Larentae. Mathews contends that the jury came to the same assessment of the evidence by finding him not guilty of malice murder. But we do not know the reasoning behind the verdicts the jury issued; the jury may have acquitted Mathews of malice murder not because the evidence failed to show that he fired a handgun, but because they thought he did not act with the requisite malice in doing so. See *Collins v. State*, 312 Ga. 727, 735 (3) (864 SE2d 85) (2021) ("[A] jury is clearly authorized to find a defendant guilty of felony murder even where it finds that a defendant did not possess the requisite 'malice' to sustain a malice murder conviction[.]"); see also *Dugger v. State*, 297 Ga. 120, 122-123 (4) (772 SE2d 695) (2015) (verdicts of guilty on felony murder and not guilty on malice murder are not necessarily inconsistent because a jury may find a defendant guilty of felony murder but find that he did not have the requisite malice to support a malice murder conviction).

Moreover, contrary to Mathews's claims, Roger's testimony was not that Mathews shot just at Roger. Instead, Roger said that

8

Mathews fired in the direction of the victims. This was sufficient to support a conviction of aggravated assault as to Larentae. And even though the evidence is not clear as to whether it was Mathews or Jackson who fired the shot that killed Reynolds, this did not absolve Mathews of guilt as a party to the crime of felony murder.

> [A] conviction as a party to a crime requires proof that the defendant shared a common criminal intent with the principal perpetrator of the crime. . . . [C]riminal intent is a question for the jury, and it may be inferred from that person's conduct before, during, and after the commission of the crime.

*Jones v. State*, 292 Ga. 656, 658 (1) (a) (740 SE2d 590) (2013). "[F]elony murder requires only that the defendant possessed the requisite criminal intent to commit the underlying felony — in this case, aggravated assault, which also does not require intent to kill." *Ware v. State*, 303 Ga. 847, 849 (II) (815 SE2d 837) (2018) (citation and punctuation omitted).

Here, the evidence showed that Mathews met the victims, took them to the apartment, and called someone to bring rims to show the victims; Jackson soon showed up, and he and Mathews soon

9

began firing at the victims demanding money. Mathews fled the apartment when Jackson did. Therefore, even assuming that Mathews did not fire the shot that killed Reynolds or shoot at Larentae, the trial evidence shows that Mathews shared Jackson's criminal intent to shoot at the victims because Mathews committed the same acts. This authorized the jury to conclude that he was at least a party to the crimes of felony murder of Reynolds and aggravated assault of Larentae. See *Harris v. State*, 312 Ga. 602, 604-605 (2) (864 SE2d 31) (2021) ("[E]ven if someone else fired the fatal shot, it is clear that Appellant . . . joined in the attack on the victim," and the jury was authorized to conclude that he was at least a party to the crime (citation and punctuation omitted)); *Teasley v. State*, 288 Ga. 468, 469 (704 SE2d 800) (2010) (that defendant did not actually fire the gun that fatally wounded the victim was immaterial to his conviction as a party to the crime of malice murder).

2. Mathews next argues that the trial court erred in allowing the prosecution to deviate from the allegations in the indictment and

10

offer proof that he committed the crimes in an uncharged manner. Mathews argues that the evidence at trial and the court's instructions to the jury on party to a crime allowed him to be convicted for merely helping co-defendant Jackson, while the indictment specifically charged him with directly committing the crimes. We interpret Mathews's argument as raising two types of claims: (1) fatal variance and (2) a challenge to the court's jury instructions. Neither has merit.

(a) *There was no fatal variance.*

In evaluating whether there is a fatal variance between the indictment and the trial evidence, our inquiry focuses on "whether there has been such a variance as to affect the substantial rights of the accused." *Roscoe v. State*, 288 Ga. 775, 776 (3) (707 SE2d 90) (2011) (citation and punctuation omitted). Generally, a variance is fatal only if the allegations: (1) fail to "definitely inform the accused as to the charges against him so as to enable him to present his defense and not to be taken by surprise" and (2) are not "adequate to protect the accused against another prosecution for the same

11

offense." Id. (citation and punctuation omitted). Mathews cannot make this showing.

Mathews points out that the language in the indictment charged that "during the commission of a felony" he caused Reynolds's death "by shooting him with a handgun" (felony murder) and that he "unlawfully commit[ted] an assault upon" Larentae "by shooting him with a handgun" (aggravated assault); he argues that these allegations necessarily required proof that he directly committed those offenses. But the evidence described above would support a finding that Mathews directly committed the aggravated assault of Larentae based on Roger's testimony that Mathews fired at the victims.

As for the felony murder charge, even if the evidence does not establish which defendant — Mathews or Jackson — directly killed Reynolds by firing the fatal shot, the evidence did support a finding that at least one of them did, and the indictment charged them jointly with causing Reynolds's death. Mathews misreads the felony murder count as charging Mathews and Jackson with both firing a

handgun that caused Reynolds's death. The indictment did not do so, but charged them collectively, such that the action of one could be attributed to the other. See *Leeks v. State*, 303 Ga. 104, 106 (2) (810 SE2d 536) (2018) ("[A]n indictment need not charge a defendant under a party to a crime theory in order for the defendant's culpability to be proven in that manner."); *Lebis v. State*, 302 Ga. 750, 760 (II) (B) (808 SE2d 724) (2017) (under party to a crime theory, the act of either the defendant or his co-defendants "was the act of the other and each is as fully responsible for the act of the other as if he had committed that act"). Because the State was not required to charge Mathews as a party to a crime in order to prove his guilt in that manner, he cannot show that he was unable to present a viable defense, or that he was surprised at trial. Therefore, his fatal variance claim fails. See *Lebis*, 302 Ga. at 759-760 (II) (B) (citing approvingly *Davis v. State*, 287 Ga. App. 786, 787 (1) (653 SE2d 104) (2007), a Court of Appeals opinion that rejected a similar fatal variance claim where the trial evidence authorized a finding that the defendant was a party to the crime).

(b) *The trial court did not err in instructing the jury on party to a crime.*

Mathews challenges the following jury charge that the trial court gave:

> Every party to a crime may be charged with and convicted of commission of the crime. A person is a party to a crime only if that person directly commits the crime or intentionally helps in the commission of the crime.

Mathews argues that this instruction did not track the language of OCGA § 16-2-20, which articulates when someone is a party to a crime, and improperly substituted without definition "helps" for the statutory text's "[i]ntentionally aids and abets," thereby creating the possibility that he was convicted merely for unwittingly or unknowingly helping Jackson.[3] Mathews's

---

[3] The State argues that Mathews did not preserve his challenge to the jury instruction because he did not object to it. But at the time of Mathews's trial in 2003, a criminal defendant was not required to object to a jury charge in order to preserve error in it for appeal; failure to preserve would occur only where, in response to a trial court's request for exceptions, a defendant failed to list any or reserve the right to object. See, e.g., *Brockman v. State*, 292 Ga. 707, 730 (17) (739 SE2d 332) (2013); *Rivers v. State*, 250 Ga. 303, 309 (7) (298 SE2d 1) (1982); compare *State v. Kelly*, 290 Ga. 29, 31-32 (1) (718 SE2d 232) (2011) (noting that OCGA § 17-8-58 (b), effective July 1, 2007, provides that unobjected-to jury charges are reviewed only for plain error). Mathews reserved the right to object, thereby preserving the issue for our review.

14

arguments relating to the use of "helps" versus "aids and abets" have been rejected by this Court in the past. See, e.g., *Sharpe v. State*, 272 Ga. 684, 688 (6) (531 SE2d 84) (2000) ("Aiding and abetting encompasses the concept of helping in the commission of a crime."). And, contrary to Mathews's argument, the trial court's instruction did not omit a mens rea requirement. The trial court specifically instructed that a party must "intentionally" help another to be convicted as a party to a crime. This claim of error therefore fails.

3. Mathews argues that the State violated the bright-line rule that this Court announced in *Mallory v. State*, 261 Ga. 625 (409 SE2d 839) (1991), that the State may not comment on a defendant's silence prior to arrest or failure to come forward voluntarily, even when the defendant chooses to testify at trial. Id. at 630 (5). Mathews argues that the State improperly commented on his pre-arrest silence during closing arguments when it argued, "Jarvis Mathews never bothered to call the police. Jarvis Mathews never at any time indicated to anybody what happened." Mathews concedes that he did not object to this argument. As a result, his claim is not

15

preserved for review. See, e.g., *Landers v. State*, 270 Ga. 189, 190-191 (2) (508 SE2d 637) (1998).[4]

Mathews also argues that the State's *Mallory* violations in cross-examining Jackson were "effectively impart[ed]" to him. We have specifically rejected this type of argument. See *Romer v. State*, 293 Ga. 339, 343 (2) (745 SE2d 637) (2013) ("[I]n the more than two decades since *Mallory* was decided, we have not extended its holding to prohibit comments on the silence or failure to come forward of witnesses other than the criminal defendant who is on trial, and we see no reason to do so now.").

4. Mathews argues that his trial counsel was constitutionally ineffective in several ways. We disagree.

---

[4] In a supplemental brief, Mathews argues that the current Evidence Code permits plain error review of improper argument. But Mathews was tried under the old Evidence Code. Even if we were to apply the current Evidence Code to his claims, he would have no *Mallory* claim at all because we have held that *Mallory* was abrogated by the current code. See *State v. Orr*, 305 Ga. 729, 739 (3) (827 SE2d 892) (2019). Moreover, even under the current code, challenges to opening or closing arguments that were not first raised by objection in the trial court are waived and not reviewed for plain error. See *Moon v. State*, 311 Ga. 421, 426 (4) (858 SE2d 18) (2021); see also *Simmons v. State*, 299 Ga. 370, 372-374 (2) (788 SE2d 494) (2016) (decided before *Orr* and concluding that *Mallory* challenges to opening and closing arguments were waived when not first raised by objection in the trial court).

To prevail on his claim, Mathews must show both that his counsel's performance was constitutionally deficient and that he was prejudiced by this deficient performance. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Mathews must "overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct, and that counsel's decisions were made in the exercise of reasonable professional judgment." *Mims v. State*, 304 Ga. 851, 855 (2) (823 SE2d 325) (2019) (citation and punctuation omitted). "[D]ecisions regarding trial tactics and strategy may form the basis for an ineffectiveness claim only if they were so patently unreasonable that no competent attorney would have followed such a course." *Richards v. State*, 306 Ga. 779, 781 (2) (833 SE2d 96) (2019) (citation and punctuation omitted). To demonstrate prejudice, Mathews must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the

17

outcome." *Mims*, 304 Ga. at 855 (2) (citation and punctuation omitted). Failure to meet either prong of the *Strickland* test is fatal to an ineffective assistance claim. See *Smith v. State*, 296 Ga. 731, 733 (2) (770 SE2d 610) (2015).

(a) Mathews argues that trial counsel was ineffective for failing to move for a directed verdict or, in closing, argue to the jury that the evidence was insufficient to prove that he acted as a party to the crime. Mathews argues that there was no evidence introduced at trial that he knowingly or intentionally helped Jackson in the crimes. Mathews has failed to show that trial counsel was deficient on this point because, as discussed above in Division 1, there was sufficient evidence from which the jury could conclude that he directly committed the crimes or, at a minimum, find that he was a party to the crimes.

(b) Mathews next argues that trial counsel was ineffective for failing to object to the trial court's instruction on party to a crime. Mathews has failed to show that trial counsel was deficient on this point for the reasons discussed in Division 2 (b). See *Sampson v.*

18

*State*, 282 Ga. 82, 85 (6) (646 SE2d 60) (2007) (the failure to make meritless objections cannot support an ineffectiveness claim).

(c) Mathews argues that his trial counsel was ineffective for failing to raise a *Mallory* objection when the State commented on his and Jackson's pre-arrest silence and failure to come forward sooner. Jackson had separate counsel, and Mathews points to no authority suggesting that his trial counsel could have objected to the State's comments on Jackson's pre-arrest silence. See *Romer*, 293 Ga. at 343 (2) (*Mallory* does not prohibit comments on the silence of witnesses "other than the criminal defendant who is on trial").

Even if trial counsel was deficient in failing to object to the State's comments on Mathews's pre-arrest silence,[5] Mathews cannot show that there is a reasonable probability that the outcome would

---

[5] The State argues that we should explicitly overrule *Mallory* to the extent that it still applies to cases tried before the current Evidence Code became effective on January 1, 2013. See *Orr*, 305 Ga. at 732-739 (2)-(3) & n.6 (holding that *Mallory*'s categorical exclusionary rule, "best characterized as judicial lawmaking," was abrogated by the current Evidence Code, and leaving for another day whether *Mallory* should continue to be applied to cases tried under the old Evidence Code). Given our resolution of Mathews's claims, it is unnecessary to reconsider *Mallory* in this case. And the passage of time continues to diminish the number of old-code cases in which overruling *Mallory* might make some difference.

have been different but for counsel's deficiency. The State's comments on Mathews's pre-arrest silence were brief, a mere two sentences during closing argument. This passing reference cannot reasonably have affected the outcome of the trial because the eyewitness testimony of the Mumpherys — one of whom (Larentae) had known Mathews since middle school — provided strong evidence of guilt. See *Rowland v. State*, 306 Ga. 59, 66 (3) (829 SE2d 81) (2019) ("Given the strong evidence of [defendant's] guilt and the minimal use by the prosecutor of the challenged evidence of [defendant's] pre-arrest failure to come forward, it is highly probable that any error in the admission of that evidence did not contribute to the verdict."); *Jackson v. State*, 305 Ga. 614, 620 (2) (a) (825 SE2d 188) (2019) (concluding that the testimony of two eyewitnesses provided strong evidence of guilt); *Barnes v. State*, 269 Ga. 345, 352 (12) (496 SE2d 674) (1998) (the "weight of the evidence" rendered harmless the State's improper comments on defendant's pre-arrest silence). Therefore, this claim of error fails.

*Judgment affirmed. All the Justices concur.*

20

Decided August 9, 2022.

Murder. Fulton Superior Court. Before Judge Adams.

*L. David Wolfe*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Karen S. Bemis, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Parisa F. Sarfarazi, Assistant Attorney General*, for appellee.