312 Ga. 602
FINAL COPY

S21A0953.  HARRIS v. THE STATE.

BOGGS, Presiding Justice.

Appellant Antonio Harris challenges his 2011 convictions for felony murder and other crimes in connection with the shooting death of Marcus Simpson and the non-fatal shootings of Kingston Ridley and Kenneth Williams. Appellant contends that the trial court erred in failing to grant his motion for directed verdict of acquittal and that he was denied the effective assistance of counsel. We affirm.[1]

---

[1] The crimes occurred on July 1, 2008. On February 2, 2010, a Fulton County grand jury indicted Appellant, Geno West, and Rontryuas Harris for malice murder, felony murder, three counts of aggravated assault with a deadly weapon, and possession of a firearm during the commission of a felony. Appellant was also charged with possession of a firearm by a first offender probationer. At a joint trial in September 2011, the jury acquitted Appellant of malice murder but found him guilty of the remaining charges, and the trial court sentenced him to serve life in prison for felony murder and a total of 50 years in prison to be served consecutively for the aggravated assaults of Ridley and Williams and the firearm possession counts; the other aggravated assault count merged. The jury acquitted Rontryuas on all counts, and we affirmed West's convictions for felony murder and other crimes in *West v. State*, 306 Ga. 783 (833 SE2d 501) (2019). On September 30, 2011, Appellant filed a motion

1. Viewed in the light most favorable to the jury's verdicts, the evidence at trial showed the following. In April 2008, Appellant, a first offender probationer, rented one side of a duplex on Fletcher Street in Fulton County. The following month, Appellant and his younger brother, Rontryuas Harris, hired Victor Powell to illegally run a cable television line to Appellant's side of the duplex. Powell climbed a nearby utility pole and connected the main cable line to a line going to Appellant's side of the duplex. Several weeks later, Appellant complained to Powell that the cable was not working. Powell returned to the duplex, climbed back up the utility pole, and saw that the main cable line had been connected to a line going to the other side of the duplex, where Ridley lived with his girlfriend Terica Marable and her children. Powell disconnected the main cable line and reconnected it to the line going to Appellant's side of

for new trial, which he amended with new counsel on January 15, 2020. After an evidentiary hearing, on October 29, 2020, the trial court denied the motion. Appellant filed a notice of appeal directed to the Court of Appeals, which properly transferred the case to this Court on March 20, 2021. The case was docketed here to the August 2021 term and submitted for a decision on the briefs.

the duplex. Ridley then came outside and asked Powell to hook the cable back up, but Powell refused to do so unless Ridley paid him. Later that evening, Appellant called Powell to report that the cable was once again not working.

On the evening of July 1, 2008, Simpson, Ridley, Williams, and two other men were sitting on the front porch of Ridley's side of the duplex drinking beer and eating pizza. Appellant and his cousin, Geno West, came out of Appellant's unit, and one of them said, "Why y'all motherf**kers tear down our cable?" Ridley responded, "Ain't nobody took none of your cable." Appellant and West then pulled out guns and started shooting at Ridley and his friends, who were not armed. Simpson was hit in the head and torso, killing him. Ridley was hit in the thigh, and Williams was hit in the knee.

At trial Ridley and Williams both testified that Appellant and West shot at Simpson, Ridley, and Williams that night. Six 9-millimeter cartridge cases that were fired from one gun and five .380 cartridge cases that were fired from a second gun were recovered from the scene.

Appellant testified at trial as follows: On the night of the shooting, he was armed and selling drugs out of an apartment a few blocks from the duplex when Rontryuas called and asked Appellant to let some of Rontryuas' friends use Appellant's apartment on Fletcher Street. West rode with him to the duplex, and Appellant left his gun in the car while he went up onto his front porch and let Rontryuas' friends inside. Appellant then sat in a chair on the porch on his side of the duplex and was talking on his cell phone with the mother of his child when he heard Ridley say, "Man[,] f**k y'all pu**y a** ni**as," followed by the sound of gunfire. He did not know who was shooting, but he immediately ran, hid behind his car until the shooting stopped, and then got into his car and left; he claimed that he did not know where West went. Appellant acknowledged that he went into hiding when his mother told him that the police were looking for him in connection with the shooting. On cross-examination, Appellant admitted that when he was arrested in February 2009, he gave the arresting officers a fake name and date of birth.

2. Appellant contends that the trial court erred in denying his motion for directed verdict of acquittal at the close of the State's case, because the evidence was legally insufficient to support his convictions. We review the denial of a directed verdict of acquittal under the same standard that we use to evaluate the sufficiency of the evidence to support a conviction. See *Smith v. State*, 304 Ga. 752, 754 (822 SE2d 220) (2018); see also *Stratacos v. State*, 293 Ga. 401, 412 (748 SE2d 828) (2013). When properly viewed in the light most favorable to the verdicts, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty of the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979); *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)). See also OCGA § 16-2-20 (defining parties to a crime); *Charleston v. State*, 292 Ga. 678, 680-681 (743 SE2d 1) (2013) (explaining that participation in a crime may be inferred from

association prior to, during, and after the crime). Moreover, contrary to Appellant's argument, it was not necessary for the State to prove that Appellant personally fired the shots that killed Simpson. See *Moore v. State*, 311 Ga. 506, 509 (858 SE2d 676) (2021). Under OCGA § 16-2-20, "even if someone else . . . fired the fatal shot, it is clear that [Appellant] and that individual joined in the attack on the victim; thus [Appellant] is criminally responsible for the injuries inflicted on the victim." *Garrett v. State*, 288 Ga. 269, 271 (702 SE2d 875) (2010) (citation and punctuation omitted). Since both Ridley and Williams testified that Appellant joined West and shot at them and Simpson, the jury was authorized to conclude that Appellant was at least a party to the crime.

3. Appellant also contends he was denied the effective assistance of counsel. To prevail on this claim, Appellant must prove both deficient performance by his counsel and resulting prejudice. See *Strickland v. Washington*, 466 U. S. 668, 687, 694 (104 SCt 2052, 80 LE2d 674) (1984). To establish prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional

6

errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. We need not address both components of the inquiry if a defendant makes an insufficient showing on one. See id. at 697.

Appellant argues that his trial counsel was constitutionally deficient in failing to investigate whether the shots that killed Simpson were fired from Appellant's gun. As noted above, however, it was not necessary for the State to prove that Appellant personally fired the fatal shots for him to be convicted of felony murder. In any event, at the motion for new trial hearing, Appellant did not present any evidence to establish what a hypothetical investigation by his counsel would have shown, much less that it would have been helpful to his defense. Thus, Appellant has failed to prove prejudice, even if trial counsel's investigation were actually deficient. See *Long v. State*, 309 Ga. 721, 728 (848 SE2d 91) (2020) (holding that in order to establish prejudice from counsel's failure to adequately investigate, a defendant must "'at least make a proffer as to what

7

additional investigation would have uncovered'" (citation omitted)). Accordingly, Appellant's ineffective assistance of counsel claim fails.

*Judgment affirmed. All the Justices concur.*

Decided October 5, 2021.

Murder. Fulton Superior Court. Before Judge Millender.

*Erica C. Matos*, for appellant.

*Fani T. Willis, District Attorney, Lyndsey H. Rudder, Elizabeth A. Rosenwasser, Stephany J. Luttrell, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Assistant Attorney General*, for appellee.