318 Ga. 697
FINAL COPY

S24A0396. EVERETT v. THE STATE.

BETHEL, Justice.

Jerome Everett was convicted of felony murder and other crimes in connection with the shooting death of Keith Nelson.[1] Everett contends that the trial court erred by giving an incorrect jury instruction on justification and that his trial counsel rendered ineffective assistance by failing to object to the State's use of his prior convictions as impeachment evidence. But the jury instruction,

---

[1] The crimes occurred in the early morning of March 28, 2008. On June 24, 2008, a Fulton County grand jury indicted Everett for malice murder (Count 1), felony murder predicated on aggravated assault (Count 2), aggravated assault with a deadly weapon (Count 3), possession of a firearm during the commission of a felony (Count 4), and possession of a firearm by a convicted felon (Count 5). Following a jury trial from March 29 to April 6, 2010, the jury found Everett not guilty of malice murder (Count 1), but guilty on the remaining counts. The trial court sentenced Everett to serve life in prison on Count 2 and a consecutive term of five years in prison on Count 4; Count 3 merged into Count 2. Everett pled guilty to Count 5 and was sentenced to serve a concurrent term of five years in prison.

Everett filed a timely motion for new trial, which was amended 12 years later through counsel. Following a hearing on August 8, 2023, the trial court denied the amended motion on September 28, 2023. Everett then filed a timely notice of appeal, and his appeal was docketed to this Court's term commencing in December 2023 and submitted for a decision on the briefs.

even if erroneous, was a harmless error, and the ineffective assistance claim fails because trial counsel was not deficient. Accordingly, we affirm.[2]

1. The evidence presented at trial showed the following.[3] On March 28, 2008, Nelson's next-door neighbor awoke around 2:30 a.m. to the sound of loud noises coming from Nelson's condominium, including Nelson's cries for help followed by what sounded like two gunshots. The neighbor called the police, and then she heard someone run down a flight of stairs, followed by a third gunshot. Police responded to the call and entered Nelson's home through the balcony door. Inside, the police found signs of a struggle, bloody

---

[2] We are troubled by the inordinate and unexplained delay between the filing of Everett's motion for new trial in 2010 and the filing of an amended motion 12 years later. So, yet again, we remind the bench and bar that long post-conviction delays "put at risk the rights of defendants and crime victims and the validity of convictions obtained after a full trial," and we "reiterate that it is the duty of all those involved in the criminal justice system . . . to ensure that the appropriate post-conviction motions are filed, litigated, and decided without unnecessary delay." *Owens v. State*, 303 Ga. 254, 258 (4) (811 SE2d 420) (2018) (citation and punctuation omitted).

[3] Because this case requires our assessment of whether an instructional error was harmless, see Division 2 below, we review the record de novo and weigh the evidence as we would expect reasonable jurors to have done. See *Jones v. State*, 316 Ga. 481, 486 (2) (888 SE2d 91) (2023).

footprints on the stairs leading to the front door, and Nelson's body lying in a pool of blood near the front door. Nelson was declared dead by a paramedic, and it was later determined that he died from blood loss caused by a gunshot wound that perforated his femoral artery. Nelson also had two gunshot wounds to his abdomen and a number of superficial injuries.

Officers spotted a man, who was later determined to be Everett, "walking briskly" away from the condo, carrying something. Officers eventually stopped Everett and returned him to the crime scene. The officers found Nelson's car and house keys in Everett's pockets, and they found blood that was later determined to be Nelson's on Everett's clothes and shoes. In the area where Everett was apprehended, officers found a flatscreen television, which Everett later admitted to stealing from Nelson's condominium, and a pair of bloody gloves. Officers also discovered a partially loaded gun in the area where Everett was apprehended, and a firearms examiner determined that three shell casings found at the crime scene were fired from the gun.

At trial, Everett testified in his own defense, admitting to shooting Nelson, but claiming he did so in self-defense. Everett testified that he was working as a prostitute the night of the murder, and that while he was at Nelson's home, Nelson took off his pants, attempted to renegotiate their agreement, and pressured him for sexual acts they had not agreed on. Everett explained that, during the back-and-forth, Nelson produced a gun and pointed it at him. The two men then fought over the gun, and it fired. Everett further testified that, after the gun first discharged, Nelson grabbed a large kitchen knife and that the gun, which by then Everett was holding, fired a second time. Nelson then dropped the knife but kept fighting and, at some point, fell down the stairs to the first floor. Everett claimed that, as he tried to pass the unarmed Nelson to exit the condo, Nelson grabbed his leg and tried to attack him. Everett tried to stop him, and the gun, which Everett was still holding, fired a third time. According to Everett, he then went back upstairs, put on gloves he found in his backpack, took Nelson's television as "payment," and lowered the television and himself off Nelson's

4

balcony.

2. In his first enumeration of error, Everett argues that the trial court erred in its jury charge with respect to the law of justification. Specifically, Everett points to a portion of the jury charge that deviated from the pattern jury charge in a manner that he contends could have misled the jury into believing that justification was not available as a defense to Everett if he was attempting to commit, committing, or fleeing after committing a theft offense that was not a felony. While we agree the instruction was not as clear as it could have been, any error in giving the instruction was harmless because the jury was highly unlikely to have believed the use of deadly force was justified in the first place.

The relevant pattern jury instruction in effect at the time of Everett's 2010 trial provided that "[a] person is not justified in using force if that person . . . is attempting to commit, is committing, or is fleeing after the commission or attempted commission of a felony (*define arguable felony*)." Suggested Pattern Jury Instructions, Vol. II: Criminal Cases § 3.10.10 (b) (4th ed. 2007). See also OCGA § 16-

5

3-21 (b) (2) (providing that "[a] person is not justified in using force under the circumstances specified in subsection (a) of this Code section if he . . . [i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony"). However, when the trial court charged the jury, it omitted the reference to a "felony," and instructed that a person is not justified in using force to defend himself if he is "attempting to commit, is committing, or is fleeing after the commission or attempted commission of a *theft*." (Emphasis supplied.) The court did not define "theft" for the jury. The trial court overruled Everett's objection to the charge.

The State's theory at trial was that Everett, armed with a gun, went to Nelson's home with the intent to rob him. The State argues that the evidence presented at trial supported this theory, and that, accordingly, the court's instruction on "theft" was authorized because it encompassed burglary and robbery, which are felonies. See *Smith v. State*, 290 Ga. 768, 771-772 (2) (723 SE2d 915) (2012); see also OCGA §§ 16-8-40 (defining robbery as a felony) and 16-7-1

(defining burglary as a felony).

Everett, however, argues that the instruction, as given, could have misled the jury into believing that he was not entitled to a justification defense if he was attempting to commit, was in the act of committing, or fleeing following the commission of *any* theft, including thefts which are misdemeanors, at the time he committed the act he claims was justified. Although Everett does not explain his argument further, the only way instructional error here could have contributed to the verdict is if reasonable jurors could have viewed the evidence as supporting the conclusion that Everett would have been justified in shooting Nelson, but that he used deadly force while committing an undefined "theft" that was not a felony. However, Everett does not specify what theft or thefts would have qualified as misdemeanors under the facts of this case.

Nonetheless, even assuming, without deciding, that the charge was erroneous because the jury was not explicitly instructed that the exception to a justification defense applied only to actions that constituted a felony, we conclude that any such error was harmless

in light of the evidence presented in this case. As we have explained before, "[e]ven when we find error in a jury charge, we will not reverse when the error is harmless, that is, when it is highly probable that the instruction did not contribute to the verdict." *Jones v. State*, 302 Ga. 892, 897 (3) (810 SE2d 140) (2018) (citation and punctuation omitted). To determine whether an instructional error was harmless, "we assess it in the context of the instructions as a whole." See *Jones v. State*, 316 Ga. 481, 486 (2) (888 SE2d 91) (2023). Additionally, as with other trial court errors, in assessing harm, "we review the record de novo, and we weigh the evidence as we would expect reasonable jurors to have done so." *Middleton v. State*, 310 Ga. 365, 370 (3) (850 SE2d 126) (2020) (citation and punctuation omitted).

Under these standards, the alleged instructional error here was harmless. First, the trial court thoroughly instructed the jury on justification, correctly explaining that it could find that Everett was justified in using deadly force only if he

reasonably believe[d] that such threat or force [was]

8

necessary to defend himself against the other's imminent use of unlawful force. A person is justified in using force that is intended to or likely to cause death or great bodily injury only if that person reasonably believes that such force is necessary to prevent death or great bodily injury to himself or to prevent the commission of a forcible felony.

See OCGA § 16-3-21 (a). The trial court also instructed the jury on the State's burden of proving beyond a reasonable doubt that the killing was not justified. It was only after the court gave these general instructions on justification that it then explained the exception under which the defense would not apply, to which Everett objects.

As we noted above, the only testimony supporting Everett's justification defense was his own testimony. But the evidence presented significantly undermined his credibility and showed that his version of events was untenable. It was undisputed that he shot Nelson three times in two different locations in Nelson's home and that Nelson was unarmed when at least the last shot was fired. Police also found Nelson's house and car keys in Everett's pockets, and Nelson's television, the firearm used in the shooting, and bloody

9

gloves discarded near where Everett was arrested. Additionally, no gunshot residue was found on Everett's hands, corroborating the State's theory that Everett was wearing gloves when he shot Nelson, and contradicting Everett's testimony. And police apprehended Everett near the scene as he was trying to flee, which the jury was authorized to view as consciousness of guilt.

Taking all of these circumstances together, we are not persuaded that there was a meaningful likelihood that the jury would have found Everett to be justified independent of any exceptions to the availability of the defense. Because a jury would have had to find Everett justified before it could consider the exception to that defense, it is highly probable that the instruction he claims to be erroneous did not contribute to the verdict. Accordingly, any error in instructing the jury was harmless. See, e.g., *Jones*, 302 Ga. at 897 (3) (no reversible error where the evidence of the defendant's guilt was "very strong" and, thus, it was not probable that the instruction contributed to the verdict); *Mullins v. State*, 299 Ga. 681, 690 (4) (791 SE2d 828) (2016) (concluding that

trial court erroneously instructed jury regarding inapplicable exception to justification defense but identifying no reversible error where "the undisputed evidence [showed] that the victim was unarmed when appellant shot him" and "the trial court fully charged the jury on the defense of self and the defense of habitation"). Everett's claim therefore fails.[4]

3. Everett next argues that trial counsel provided ineffective assistance by failing to object to the State's use of his prior convictions as impeachment evidence, thereby failing to preserve the issue for appellate review. Because the record shows that trial counsel in fact objected and properly preserved the issue for appeal, this claim fails.

To prevail on his claim of ineffective assistance, Everett

---

[4] In his brief, Everett purported to enumerate as error a second instance of alleged trial court error, namely that the trial court erred in admitting evidence of his prior convictions. However, Everett failed to support this particular assertion with any argument or citation to legal authority in his brief. Accordingly, to the extent he intended to assert this error, it is abandoned. See former Supreme Court Rule 22 (2023). See also *Ruffin v. State*, 283 Ga. 87, 88 (4) (656 SE2d 140) (2008) (deeming abandoned under Rule 22 an unsupported claim of error).

11

has the burden of proving both that the performance of his lawyer was professionally deficient and that he was prejudiced as a result. To prove deficient performance, [an appellant] must show that his trial counsel acted or failed to act in an objectively unreasonable way, considering all of the circumstances and in light of prevailing professional norms. To prove resulting prejudice, [an appellant] must show a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. In examining an ineffectiveness claim, a court need not address both components of the inquiry if the defendant makes an insufficient showing on one.

*Floyd v. State*, 307 Ga. 789, 799 (4) (837 SE2d 790) (2020) (citation and punctuation omitted). With these principles in mind, we turn to Everett's claim.

Everett filed two pretrial motions in limine to prevent the use of his five prior convictions as impeachment evidence, arguing that the crimes did not involve veracity. However, the trial court did not rule on the admissibility of the evidence at the pretrial hearing. Rather, after hearing argument on Everett's motions, the trial court reserved ruling on them until Everett opted to testify at trial. After Everett testified on direct examination but prior to his cross-examination, counsel renewed her objection to the admission of

12

evidence of his prior convictions. The trial court sustained the objection as to two convictions but overruled the objection as to the remaining three: two convictions for retail shoplifting and one for receipt of stolen property, all felonies. When the State began to cross-examine Everett about his prior convictions, trial counsel objected once more and asked that the State tender the physical copies of the indictments before reading from them; the court overruled that objection. After the physical copies of the convictions were admitted, counsel raised no further objection.

We have previously stated that the "[s]tandard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal[.]" *Whitehead v. State*, 287 Ga. 242, 246 (2) (695 SE2d 255) (2010). Everett's counsel did so here, and "[t]he trial court ha[d] been apprised of the possible error in admitting the evidence and ha[d] made its ruling, and the record ha[d] been perfected for appeal purposes." Id. at 247

13

(2). There was no reason to make another objection.[5] See *Simpson v. State*, 277 Ga. 356, 357 (2) (589 SE2d 90) (2003) (noting that requiring a second objection would be "superfluous because the trial court has been apprised of the possible error in admitting the evidence and has made its ruling," and additional objection "may further highlight the inflammatory evidence, as well as unduly burden the trial court, which has already ruled on the issue" (cleaned up)). Compare *Watson v. State*, 278 Ga. 763, 767 (2) (b) (604 SE2d 804) (2004) (holding that an issue was not adequately preserved where defendant filed a motion in limine, trial court did not issue a pretrial ruling, and defendant did not object until *after* the problematic testimony had concluded), overruled on other grounds, *State v. Lane*, 308 Ga. 10 (838 SE2d 808) (2020). Accordingly, trial counsel in fact properly objected to the admission of evidence of Everett's prior convictions and thereby preserved the

---

[5] Because this case was tried in 2010, the former Evidence Code applies. However, the rule is the same under the current Evidence Code. See OCGA § 24-1-103; see also *Rashad v. State*, 318 Ga. 199, 209 (3) (a) (897 SE2d 760) (2024).

14

issue for ordinary appellate review, and Everett's claim of ineffective assistance fails. See *Salvesen v. State*, 317 Ga. 314, 321 (4) (893 SE2d 66) (2023) (rejecting claim of ineffective assistance based on purported failure to preserve errors where trial counsel properly preserved claim by making a timely objection in the trial court).

*Judgment affirmed. All the Justices concur.*

Decided March 19, 2024.

Murder. Fulton Superior Court. Before Judge Krause.

*Daniel H. Petrey*, for appellant.

*Fani T. Willis, District Attorney, Kevin C. Armstrong, Mario Kladis, Assistant District Attorneys; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Meghan H. Hill, Clint C. Malcolm, Senior Assistant Attorneys General, Sarah J. Thomas, Assistant Attorney General*, for appellee.