**NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.**

In the Supreme Court of Georgia

Decided: July 1, 2025

S25A0710.  CHAPMAN v. THE STATE.
S25A0711.  WATSON v. THE STATE.

PETERSON, Chief Justice.

Yaquan Chapman and Jordan Watson appeal their convictions related to the shooting death of William Trawick and the assault of Aubrey Stansill and Griffin Cleveland.[1] On appeal, Watson argues

---

[1] The shootings occurred on February 16, 2021. On October 12, 2022, a Butts County grand jury indicted Chapman, Watson, Calvin Rozier, and Carey Williams individually, and as parties to a crime, with the malice murder and felony murder of Trawick (Counts 1 and 2), aggravated assault of Cleveland (Count 3), aggravated assault of Stansill (Count 4), and aggravated assault of Trawick (Count 5). Williams's case was severed from his co-indictees, and he testified as a witness for the State. Following a jury trial held from November 13 to 16, 2023, Chapman and Watson were found guilty on all counts.

On November 16, 2023, Chapman and Watson were both sentenced to life in prison without parole for malice murder (Count 1), 20 years in prison for the aggravated assault of Cleveland (Count 3), and 20 years in prison for the aggravated assault of Stansill (Count 4). The other counts merged or were vacated by operation of law.

Chapman timely moved for a new trial, which was amended on June 10, 2024. After a hearing, the trial court denied Chapman's motion on December 9, 2024. Chapman timely filed a notice of appeal, and the case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

Watson timely moved for a new trial, which was amended on July 26,

that there was insufficient evidence to convict him of malice murder and aggravated assault and that trial counsel provided ineffective assistance in various respects. Chapman also claims that trial counsel provided ineffective assistance and raises multiple alleged trial court errors. For the reasons that follow, we affirm.

The evidence at trial showed the following. On February 16, 2021, the four co-indictees — Chapman, Watson, Calvin Rozier, and Carey Williams — devised a plan to purchase marijuana from Trawick and then rob him. The group recruited Christian Miles to drive them to Trawick's home in Jackson. On the drive, the group decided to use the phrase "Go time" to signal when to move forward with the robbery. In the car, Watson was carrying a firearm described as an "AR," and Rozier and Chapman carried handguns.

When the group arrived at Trawick's home, Chapman, Rozier, and Williams went inside, while Watson and Miles stayed in the car. Trawick, his girlfriend Stansill, and his friend Cleveland were all

2024. After a hearing, the trial court denied Watson's motion on January 6, 2025. Watson timely filed a notice of appeal, and the case was docketed to the April 2025 term of this Court and submitted for a decision on the briefs.

sitting in the living room. For about an hour, the group played video games and smoked marijuana. At 9:05 p.m., Chapman texted Rozier "Draw down on Diego"[2] and "Wait in Carey[.]"

At 9:36 p.m., Rozier texted Williams from his Apple Watch, "Go time[.]"In response, Williams went outside to retrieve Watson from the car. After Williams and Watson entered the house, Chapman, Rozier, and Watson pulled their guns out and began firing. Trawick was shot in the upper chest, hip, buttocks, and arm, and Stansill was shot in the knee.

A few moments later, Watson, Chapman, Rozier, and Williams ran back to the car. Once Cleveland heard them leave, he ran out of the back door of the house. At this point, Watson, Chapman, Rozier, and Williams realized that they had left behind multiple personal items, including Rozier's ID and Apple Watch, and Chapman's phone. They returned to retrieve those items, and a second round of shooting began. Chapman was shot in the arm, and Cleveland was shot in the back of the leg. After the second round of shooting, the

---

[2] Cleveland testified that Trawick also went by "Diego."

group retreated to the car. Miles drove them to a hospital in Stockbridge where Watson escorted Chapman inside. Once Watson and Chapman entered the hospital, the remaining group members dispersed.

After the shootings, Stansill dialed 911. Emergency medical personnel and police officers arrived on the scene. As police conducted a protective sweep of the home, an officer asked Trawick who shot him; Trawick responded, "Quan Carey."[3] Trawick later died at the scene.

Officers collected four 9mm cartridge casings and four .223 cartridge casings from Trawick's home. Based on the recovered casings, a firearms expert testified at trial that three firearms were used during the shooting: two 9mm pistols and one AR-15. The shot that killed Trawick came from a 9mm pistol. Officers also collected DNA samples from blood found on the exterior of Trawick's home. The State's DNA expert testified at trial that this blood "matched" Chapman's DNA profile.

---

[3] Miles testified that Chapman's nickname is Quan.

At trial, Stansill testified that when the shooting began, Trawick said, "[S]o it's like that, Quan?" She also testified that one of the shooters had a dreadlock hairstyle. Video footage of Watson entering the hospital in Stockbridge confirmed that Watson had dreadlocks the night of the shooting. After the shooting, Cleveland told police that one of the shooters had a stutter. At trial, the lead investigator who interviewed Chapman testified that Chapman had a stutter.

*Chapman v. The State, Case No. S25A0710*

On appeal, Chapman argues that (1) the jury was unfairly prejudiced by hearing trial counsel's motion to continue before trial began; (2) the trial court erred by (a) improperly admitting evidence of a gun barrel, (b) improperly admitting a cell phone download, and (c) overruling trial counsel's objection to statements made by the prosecutor during closing arguments; and (3) trial counsel was ineffective for (a) failing to file a motion to sever Chapman's trial from his co-defendants and (b) failing to adequately prepare for trial. As discussed below, each of these claims fails.

(1) Chapman contends that the trial judge impermissibly commented on trial counsel's preparedness in violation of OCGA § 17-8-57 (a) when the judge denied trial counsel's motion for a continuance. OCGA § 17-8-57 (a) (1) provides that "[i]t is error for any judge, during any phase of any criminal case, to express or intimate to the jury the judge's opinion as to whether a fact at issue has or has not been proved or as to the guilt of the accused." We need not decide whether this claim was preserved for ordinary appellate review;[4] even if it was, the claim fails because the trial judge's comments were not comments about Chapman's guilt or whether a fact at issue had been proved.

After the jury pool was sworn in but before jury selection began, Chapman's trial counsel moved for a continuance. Trial counsel explained that he was participating in a different trial shortly before Chapman's trial, and without additional time to

---

[4] Before jury selection began, Chapman's trial counsel moved for a continuance, which the trial court denied. Then after voir dire began, Chapman's trial counsel objected to the comments the trial judge made when ruling on his motion to continue. The State argues that Chapman waived this claim by waiting to object until after voir dire began.

prepare for Chapman's trial, he "would be ineffective per se." The trial judge responded,

> [W]hat I did about five months ago, when y'all told me this case was going to be tried, I called all the attorneys. I said I want every attorney here for every court day that I have non-jury to be ready for this trial. I don't recall ever seeing you one time come down here. I don't know your schedule. You took the case. You took it knowing what was going to happen. Your motion is denied.

Chapman complains that the trial judge's comment expressed the judge's opinion that trial counsel was "inept." But we have held that a trial judge's "brief musing about defense counsel's strategy" is not "the type of direct comment on the substance or weight of the evidence" that violates OCGA § 17-8-57. *Dailey v. State*, 297 Ga. 442, 443 (2) (774 SE2d 672) (2015). Here, the trial judge merely discussed whether he would grant trial counsel's motion and noted that Chapman's trial counsel took the case knowing that the trial was quickly approaching. Even if the judge was critical of trial counsel's time management, that is not the type of comment that violates OCGA §17-8-57 (a). See *Dailey*, 297 Ga. at 443 (2). Accordingly, this claim fails.

7

(2) Chapman claims that the trial erred in three respects.

(a) First, Chapman argues that the trial court abused its discretion by admitting into evidence a gun barrel used during the shooting that he claims was improperly authenticated. Specifically, Williams testified that the assault rifle Watson used during the shooting belonged to Chapman. The State then showed Williams the barrel of an assault rifle and asked Williams to identify the item. Williams testified that it was "the barrel to the AR[,]" and the State sought to admit the item into evidence. Chapman's trial counsel objected, arguing, "That could be any gun. We don't know where it came from." The trial court asked Williams, "[I]s that gun you saw — you had that day — you saw it that day?" Williams responded, "Yes[,]" and the trial court admitted the gun barrel over Chapman's counsel's objection.

Chapman argues that the trial court abused its discretion by admitting the gun barrel because Williams did not provide any additional information about how he could identify the evidence other than his assertion that he had seen Chapman with the gun

8

before. "The admission of evidence is committed to the sound discretion of the trial court, and the trial court's decision whether to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion." *Collins v. State*, 321 Ga. 215, 220 (3) (913 SE2d 644) (2025) (citation and punctuation omitted). Here, the trial court did not abuse its discretion in admitting the gun barrel. Williams testified that he was familiar with Chapman's gun barrel and had seen it before. This is sufficient evidence to authenticate the gun barrel. See OCGA § 24-9-901 (a)-(b) (1) ("[t]estimony of a witness with knowledge that a matter is what it is claimed to be" is sufficient to satisfy the requirements of authentication or identification); cf. *Henderson v. State*, 317 Ga. 66, 86-87 (8) (891 SE2d 884) (2023) (photos were properly authenticated and admitted because the witness testified he was familiar with the photos and the people in them). Accordingly, this claim fails.

(b) Second, Chapman argues that the trial court abused its

discretion by admitting Watson's cell phone download.[5] Because Chapman's objection to the admission of the cell phone download was untimely, we review this enumeration for plain error only.[6] To show plain error, an appellant must show that the alleged error "(1) was not affirmatively waived, (2) was clear and obvious beyond reasonable dispute, (3) likely affected the outcome of the proceedings, and (4) seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Johnson v. State*, 319 Ga. 562, 567 (1) (905 SE2d 570) (2024). "[I]f an appellant fails to satisfy any one prong of the plain error test, we need not consider the other prongs." Id. Because any alleged error in admitting the cell phone download did not affect the outcome of Chapman's trial, this claim

---

[5] In his brief, Chapman argues that the trial court abused its discretion by admitting a "phone dump," which appears to be a thumb drive containing information taken from Watson's cell phone, such as Watson's photos.

[6] Trial counsel for Rozier and Watson — but not Chapman — timely objected to the admission of the cell phone download. Chapman's trial counsel objected only after the State admitted a video taken from the cell phone download and that video was played for the jury. See *Everett v. State*, 318 Ga. 697, 703 (3) (899 SE2d 699) (2024) ("[S]tandard practice in Georgia has long required a party to make and obtain a ruling on an objection to evidence in the trial court, before or as the evidence is admitted, in order to preserve the objection for appeal." (citation and punctuation omitted)).

fails.

The only evidence published from the cell phone download was a video of Chapman holding an AR-15. This evidence was cumulative of other properly admitted evidence, namely Williams's testimony that Chapman owned an AR-15. More importantly, the State presented other strong, unchallenged evidence of Chapman's guilt, including evidence that Chapman's blood was found at the scene, Miles's testimony that he drove Chapman to Trawick's home on the day of the shooting, Trawick's statement that "Quan" shot him, Cleveland's statement that one of the shooters had a stutter, and the lead investigator's testimony that Chapman had a stutter. "Given the other, compelling evidence of [Chapman's] guilt in comparison to the weakly incriminating evidence derived from" the cell phone download, Chapman "has not shown that any error in the admission of the . . . evidence likely affected the outcome of his trial." *Goins v. State*, 310 Ga. 199, 205 (4) (850 SE2d 68) (2020); see also *Madera v. State*, 318 Ga. 593, 596-597 (2) (899 SE2d 132) (2024) (rejecting plain error claim where defendant argued that evidence

11

should have been excluded as cumulative of other unchallenged evidence, and the evidence of defendant's guilt was strong). Accordingly, this claim fails.

(c) Finally, Chapman claims the trial court erred by overruling his objection to statements made by the prosecutor during closing arguments. Specifically, Chapman contends that the prosecutor impermissibly shifted the burden of proof onto the defense when he stated

> [t]he burden lies entirely with the State. The defense has no burden to present any evidence or call any witnesses at all, but they can, if they have them. If they want to call a witness to the stand, they can. If they want to present a piece of evidence, they can and they did. . . . *If they want to talk to [Trawick's] mom, put a subpoena in her hand, put her on the stand.* (emphasis added).

We review a trial court's ruling on an objection during closing arguments for abuse of discretion. See *Ridley v. State*, 315 Ga. 452, 456-457 (4) (883 SE2d 542) (2023). We have held that similar statements by prosecutors that "comment[ ] on the defense's failure to present evidence, made with express reference to the fact that the burden of proof rests 'completely' with the State[,]" are not improper.

12

See id. at 457-458 (4) (a) (holding that it was not improper for the prosecutor to repeatedly note that the defense had the same power to subpoena witnesses as the State during closing arguments); see also *Kimbro v. State*, 317 Ga. 442, 452 (7) (893 SE2d 678) (2023) (trial court did not abuse its discretion in overruling objection to the prosecutor's comment that "[t]here is no defense raised by this evidence" as it "merely emphasized to the jury that [the defendant] had not successfully rebutted or explained the State's evidence"). Thus, the prosecutor's comments were within the bounds of proper closing argument, and the trial court did not abuse its discretion in overruling Chapman's objection to them. Accordingly, this claim fails.

(3) Chapman contends that his trial counsel was ineffective in two respects. We disagree.

To prevail on a claim of ineffective assistance of counsel, a defendant must prove both that his counsel's performance was deficient and that the deficient performance prejudiced him. See *Strickland v. Washington*, 466 U.S. 668, 687 (104 SCt 2052, 80 LE2d

13

674) (1984). "Deficient performance means that no reasonable lawyer would have done what trial counsel did, while prejudice means there is a reasonable likelihood that the outcome of the trial would have been different but for the deficient performance." *Parker v. State*, 320 Ga. 572, 579 (4) (910 SE2d 580) (2024) (citation and punctuation omitted). If Chapman fails to show either prong of the *Strickland* test, we need not examine the other prong. See *Terrell v. State*, 313 Ga. 120, 130 (5) (868 SE2d 764) (2022).

(a) Chapman contends that his trial counsel was ineffective for failing to file a motion to sever his trial from his co-defendants.[7] But even if trial counsel had filed a motion to sever, the trial court would not have abused its discretion by denying the motion. See *Green v. State*, 302 Ga. 816, 819-820 (2) (b) (809 SE2d 738) (holding that the

---

[7] Chapman also claims that the trial court erred by denying his co-defendant's counsel's motion to sever. But Chapman's trial counsel did not join the motion to sever, so this error has not been preserved for our ordinary appellate review. See *Holmes v. State*, 301 Ga. 143, 146 (3) (800 SE2d 353) (2017) (failure to file or join a motion to sever waives the claim for appellate review). And plain error review is not available for this type of alleged error. See *Keller v. State*, 308 Ga. 492, 497 (2) (a) (842 SE2d 22) (2020) (listing limited categories of alleged errors for which plain error review is available). Accordingly, our review is limited to Chapman's claim that his trial counsel performed deficiently by failing to file a motion to sever.

14

defendant's ineffective assistance of counsel claim failed because "[e]ven if counsel had filed a motion to sever, the court would not have abused its discretion in denying the motion as [the defendant] would not have been able to show prejudice from the joint trial"). Accordingly, this claim fails because, even assuming counsel was deficient, Chapman has failed to prove prejudice.

"When ruling on [a motion to sever], a court should consider: (1) the likelihood of confusion of the evidence and law; (2) the possibility that evidence against one defendant may be considered against the other defendant; and (3) the presence or absence of antagonistic defenses." *Saylor v. State*, 316 Ga. 225, 230-231 (2) (887 SE2d 329) (2023) (punctuation and citation omitted). Chapman has failed to make this showing.

This case involved only three defendants who were tried for the same offenses relating to the same incident. The law and the evidence were substantially the same for all of them, and the State argued that the defendants acted together to commit the crimes. See *Saylor*, 316 Ga. at 230-231 (2) (holding that trial court did not abuse

15

its discretion in denying defendant's motion to sever when the case "involved only three defendants who were tried for almost all the same offenses relating to the same incidents," "[t]he law and evidence were substantially the same for all of them, and the State argued that the defendants acted in concert in committing the crimes"). The only evidence Chapman points to that may have created confusion was the admission of Rozier's, Chapman's, and Williams's text messages. But the trial court instructed the jury to consider the text messages only as related to the defendants who made them. Finally, Chapman argues that severance was required because his co-defendant's defenses were antagonistic. But "a defendant must do more than raise the existence of antagonistic defenses" to demonstrate that the trial court would have abused its discretion in denying a motion to sever. Id. And Chapman has failed to point to specific prejudice from antagonistic defenses that would have required the trial court to grant his motion to sever. See *Lupoe v. State*, 300 Ga. 233, 242 (2) (c) (794 SE2d 67) (2016); see also *Walter v. State*, 304 Ga. 760, 763-764 (2) (822 SE2d 266) (2018) (where the

16

evidence showed the co-defendants acted in concert, severance was not required where the co-defendants blamed the defendant for the shooting and claimed that they were not present during or did not participate in the murder).

Because the trial court would not have abused its discretion by denying a motion to sever had Chapman's trial counsel filed such a motion, Chapman has failed to demonstrate prejudice and this claim fails. See *Lupoe*, 300 Ga. at 242 (2) (c) (concluding that trial counsel's failure to file a motion to sever could not support an ineffective assistance of counsel claim because "the trial court would not have abused its discretion in denying it").

(b) In Chapman's final enumeration, he claims that "[t]rial counsel was ineffective in assisting [him] at trial" because counsel was "unprepared and ineffective . . . due to not reviewing the discovery materials or investigating possible defenses." Even assuming that Chapman could demonstrate deficient performance, he cannot demonstrate prejudice. At the motion for new trial hearing, Chapman failed to introduce any evidence to support his

assertion that further investigation and preparation by trial counsel would have changed the outcome of his trial. A defendant claiming that his counsel was underprepared must show that more preparation "might have produced [something] that would have made a difference in the outcome of his trial." *Roberts v. State*, 305 Ga. 257, 266 (5) (c) (824 SE2d 326) (2019). Because Chapman "presents no evidence, or even assertion, as to what further investigation or preparation might have produced that would have made a difference in the outcome of his trial[,]" he has failed to demonstrate prejudice, and his ineffective assistance of counsel claim fails. *Lane v. State*, 299 Ga. 791, 795-796 (3) (792 SE2d 378) (2016).[8]

*Watson v. The State, Case No. S25A0711*

---

[8] We have assumed two trial counsel deficiencies in failing to file a motion to sever and failing adequately to prepare for trial and one trial court error in admitting Watson's cell phone download. Chapman does not argue that we should conduct a cumulative error review. Even if the assumed trial counsel deficiencies and assumed evidentiary error are errors that could be examined cumulatively, see *State v. Lane*, 308 Ga. 10, 17-18 (1) (838 SE2d 808) (2020), we conclude that any such cumulative error does not demand a new trial. See *Williams v. State*, 318 Ga. 83, 97 (5) (f) (896 SE2d 109) (2024); *Robbins v. State*, 320 Ga. 19, 28 (3) (b) n.3 (907 SE2d 615) (2024).

18

On appeal, Watson argues that there was insufficient evidence to convict him of malice murder and aggravated assault; and trial counsel was ineffective for (a) failing to move for a mistrial based on the prosecutor's comments during closing argument, (b) failing to file a motion to sever Watson's trial from his co-defendants, and (c) failing to object to comments Chapman's counsel made during opening statements. As discussed below, each of these claims fail.

(4) Watson argues that there was not sufficient evidence to convict him of malice murder and aggravated assault. When reviewing the sufficiency of the evidence as a matter of constitutional due process, we view the evidence in the light most favorable to the verdict and inquire whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See *Jackson v. Virginia,* 443 U.S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). "In conducting that evaluation, it is not the job of this Court to weigh the evidence on appeal or resolve conflicts in trial testimony[.]" *Mims v. State*, 310 Ga. 853, 854 (854 SE2d 742) (2021) (citation and punctuation omitted).

We conclude that the evidence here was sufficient as a matter of constitutional due process to authorize the jury to find Watson guilty, at a minimum, as a party to the crimes of murder and aggravated assault. A jury may find a defendant guilty beyond a reasonable doubt if the evidence shows either that he directly committed the crime or that he was a "party thereto." OCGA § 16-2-20 (a). A person is a party to the crime if he aids or abets in its commission or if he "advises, encourages, hires, counsels, or procures another" to commit it. OCGA § 16-2-20 (b) (3), (4). "And although the defendant's mere presence at the scene is not enough to convict him as a party to the crime, the jury may infer his criminal intent from his presence, companionship, and conduct before, during, and after the offense." *Willis v. State*, 315 Ga. 19, 24 (2) (880 SE2d 158) (2022) (citation and punctuation omitted).

Here, Williams and Miles testified that Watson was with them on the day of the shooting, and on the car ride over to Trawick's home Watson was carrying an AR-15. During this car ride, the group planned the robbery and agreed on a signal they would use to start

the robbery. After receiving the signal from Rozier, Williams went outside to retrieve Watson. Williams testified that Watson was one of the people shooting at Trawick and Stansill in the living room and that Watson went with the group back toward the house to retrieve their personal items when Cleveland was shot. Finally, Stansill also testified that Watson was one of the shooters, and this testimony was supported by spent cartridges recovered at the scene.

This evidence was sufficient for a reasonable jury to conclude that Watson was involved in planning the crimes and was an active participant during the shooting. See *Mathews v. State*, 314 Ga. 360, 365 (1) (877 SE2d 188) (2022) ("[E]ven assuming that [the defendant] did not fire the shot that killed [the victim] or shoot at [the second victim], the trial evidence shows that [the defendant] shared [the co-defendant's] criminal intent to shoot at the victims because [the defendant] committed the same acts."); *Harris v. State*, 312 Ga. 602, 604-605 (2) (864 SE2d 31) (2021) ("[E]ven if someone else fired the fatal shot, it is clear that Appellant and that individual joined in the attack on the victim[,]" and thus the jury was

21

authorized to conclude that he was at least a party to the crime. (citation and punctuation omitted)). Accordingly, this claim fails.

(5) Watson also contends that trial counsel was ineffective in three respects. We disagree.

(a) During closing arguments, the prosecutor stated,

[S]ome day these good-looking young men are . . . going to have to think about the thing that they did. Carey Williams has thought about that and that's why he's talking to you. Why is Carey Williams – what's he getting out of this? He's getting the morning when he's fifty years old and he wakes up and say, damn it, I'm glad that I did that. I am so glad I did that.

Watson claims that the prosecutor's remark implied that Williams was taking responsibility by testifying for the State, while Watson was avoiding accountability by not testifying. Thus, Watson contends, the prosecutor's remark impermissibly commented on Watson's right to remain silent and his trial counsel should have objected. We disagree.

The prosecutor's comment fell within the wide range of permissible arguments the State can make during closing. See, e.g., *Ledford v. State*, 289 Ga. 70, 88 (22) (d) (709 SE2d 239) (2011)

22

(holding that the prosecutor's comment that the jury had not "heard any evidence of [the defendant] taking responsibility" was not an improper comment on the defendant's failure to testify), disapproved of on other grounds by *Willis v. State*, 304 Ga. 686, 706-707 (11) (a) n.3 (820 SE2d 640) (2018); *Smith v. State*, 279 Ga. 48, 49 (2) (610 SE2d 26) (2005) (prosecutor's comment on the defendant's lack of remorse not an improper comment on the defendant's failure to testify). Thus, any objection to this comment would have been meritless, and this claim fails. See *Lopez v. State*, 318 Ga. 664, 672 (3) (b) (898 SE2d 441) (2024) (explaining that trial counsel does not perform deficiently by failing to make a meritless objection).

(b) Next, Watson argues that trial counsel was ineffective for failing to file a motion to sever. Because the trial court would not have abused its discretion by denying a motion to sever if trial counsel had filed one, Watson has failed to show prejudice and this claim fails. See *McCabe v. State*, 319 Ga. 275, 288-289 (4) (a) (903 SE2d 78) (2024); see also *Green*, 302 Ga. at 819-820 (2) (b).

As discussed in Division (3) (a), the first two factors in the

severance analysis — the potential for jury confusion and the possibility that evidence against one defendant would be considered against the other defendant — do not support Watson's contention that severance was required any more than they supported Chapman's contention. See *McCabe*, 319 Ga. at 288-289 (4) (a). The law and the evidence were substantially the same for all three defendants. And the only evidence Watson argues may have created confusion was the admission of Rozier's, Chapman's, and Williams's text messages. But the trial court instructed the jury to consider the text messages only as related to the defendants who made them. See *Virger v. State*, 305 Ga. 281, 290-291 (4) (824 SE2d 346) (2019) (holding that trial court did not abuse its discretion in denying defendants' motion to sever when the law and the evidence for each co-defendant was largely the same and the trial court provided proper limiting instructions when evidence against one of the co-defendants was inadmissible against the other).

Watson also argues that severance was required because his co-defendant's defenses were antagonistic. "That alone, however, is

insufficient to require severance, because unless there is a showing of resulting prejudice, antagonistic defenses do not automatically require a severance." *Virger*, 305 Ga. at 291 (4). In his brief, Watson points to the statements of his co-defendants during opening and closing arguments (where the co-defendants attempted to shift the blame for the shooting onto Watson) as evidence of prejudice. "But any prejudice from those comments was limited by the trial court's instructions to the jury" that opening and closing statements are not evidence. *Hurston v. State*, 310 Ga. 818, 827 (3) (a) (854 SE2d 745) (2021). Accordingly, the trial court would not have abused its discretion by denying a motion to sever if Watson's trial counsel had filed one, and this claim fails because Watson has failed to show prejudice.

(c) During opening statements, Chapman's counsel argued that there was reasonable doubt that Chapman was guilty because Chapman "never shot that assault rifle" and "according to the State's evidence, it was [Watson]." Watson claims his counsel was ineffective for failing to object to this comment. But Chapman's

counsel's comment fell within the wide range of permissible statements parties can make during opening statements. See *Harvey v. State*, 296 Ga. 823, 833 (2) (c) (770 SE2d 840) (2015) ("The trial court has [the] sound discretion to control the content of the opening statement of either party[.]" (citation and punctuation omitted)); *Newman v. State*, 309 Ga. 171, 176 (2) (b) (844 SE2d 775) (2020) (noting that the purpose of opening statements is to elaborate on what the parties expect the evidence will show). Chapman's counsel was discussing what he believed the State's evidence would show, and the State did admit evidence that Watson shot the AR-15. Thus, any objection to this comment would have been meritless and this claim fails. See *Lopez*, 318 Ga. at 672 (3) (b).

*Judgments affirmed. Warren, PJ, and Bethel, Ellington, McMillian, LaGrua, Colvin, and Pinson, JJ, concur.*

26